UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| CHRISTOPHER E. ASHLOCK, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 3:11-CV-204 JD |
|  | ) |  |
| GERALD MYERS, M.D., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **OPINION AND ORDER**

In this case, Plaintiff Christopher E. Ashlock alleges that Defendant Dr. Gerald E. Myers was deliberately indifferent to medical needs that Mr. Ashlock sustained as a result of an attack by other inmates within the Indiana State Prison. Mr. Ashlock initially filed this action *pro se*, but is now represented by counsel. Discovery has closed, and Dr. Myers moved for summary judgment on the merits of Mr. Ashlock's claim. Mr. Ashlock did not respond to the motion, and his time to do so has passed, so this matter is now ripe for ruling. For the following reasons, the Court grants the motion for summary judgment.

### **I. FACTUAL BACKGROUND**

Pursuant to Federal Rule of Civil Procedure 56(e), if a party "fails to properly address another party's assertion of fact" in responding to a motion for summary judgment, the court may "consider the fact undisputed for the purposes of the motion." Here, Mr. Ashlock did not respond to the motion for summary judgment, so the Court accepts the following facts submitted by Dr. Myers as undisputed.[1] At some time during the day on May 16, 2010, Mr. Ashlock, who was a prisoner at the Indiana State Prison, was attacked by other inmates. Later that evening, he

---

[1] This apparently has no substantive effect on the resolution of the motion, however, as in response to an inquiry from the Court, Mr. Ashlock's counsel indicated that he did not intend to file any response to the motion because he did not believe that any meritorious response existed.

requested to be seen by medical staff. He was able to walk to the nursing station, where a nurse observed that Mr. Ashlock's right eye was swollen shut, and that Mr. Ashlock had abrasions to his right cheek and forehead, with swelling and bruising around his right eye and cheek. His vital signs were normal except for elevated blood pressure and there was no active bleeding, so Mr. Ashlock was admitted to the medical dorm for observation overnight. He was also given Tylenol for pain and bags of ice. Mr. Ashlock returned to the nursing station the following morning, on May 17, 2010, and was seen by Nurse Nicole Holloway. Nurse Holloway took Mr. Ashlock's vital signs and reported her findings to Dr. Myers. Dr. Myers prescribed Tylenol with Codeine #3 for Mr. Ashlock's pain, and he also ordered x-rays of Mr. Ashlock's jaw, nasal bones, and eye sockets. He also ordered a full liquid diet for Mr. Ashlock through May 30, 2010. Because Mr. Ashlock had received appropriate care and assessment from the nursing staff and his injuries were not life-threatening, there was no medical reason for Dr. Myers to send Mr. Ashlock to the emergency room, so he did not do so.

     Mr. Ashlock had the x-rays taken the next day, on May 18, 2010. The x-rays showed no definite fracture of the mandible, but possible blowout fracture of the orbital floor as well as a fracture of the zygomatic arch and the ethmoid sinus. Dr. Myers therefore submitted a consultation request to send Mr. Ashlock to Wishard Hospital Oculoplastic Surgery Clinic to address these injuries. Dr. Myers noted that the request was "Urgent." The clinic scheduled the appointment for June 16, 2010. Dr. Myers had no control over when the specialty clinic would schedule appointments for offenders, as they scheduled the appointment based on their availability. Mr. Ashlock also reported an increase in pain in his mouth, so Dr. Myers discontinued the Tylenol #3 and instead prescribed Vicodin twice a day for seven days. Mr. Ashlock's jaw was also wired shut by the prison dentist and oral surgeon.

On May 24, 2010, Mr. Ashlock's Vicodin prescription was about to run out, but Mr. Ashlock continued to report a great deal of pain, so Dr. Myers extended the Vicodin prescription for one more day, through May 26, 2010, and also Tramadol for thirty days for pain. Mr. Ashlock continued to report tremendous pain, so Dr. Myers examined him on June 3, 2010. Dr. Myers prescribed MS Contin, or morphine, for twenty-one days, and also ordered Tylenol 300, since the new medication was not in stock. Dr. Myers further ordered shots of Nubain and Phenergan for Mr. Ashlock's pain. Dr. Myers also anticipated that the specialists would require a CT scan of Mr. Ashlock's face, so he ordered one to be conducted prior to that appointment. The CT scan was performed on June 9, 2010. On June 15, 2010, Dr. Myers again ordered a one-time administration of Nubain and Phenergan for Mr. Ashlock's pain.

The next day, June 16, 2010, Mr. Ashlock had his appointment at Wishard Hospital in the Oculoplastics Clinic. The doctor recommended surgery for the orbital fractures in two to five weeks, and noted that the surgery was "non-urgent." Thereafter, on June 22, 2010, Dr. Myers released Mr. Ashlock from the medical dorm and changed him from a full liquid diet to a dental soft diet. Three days later, on June 25, 2010, Mr. Ashlock was transferred to the Wabash Valley Correctional Facility since that facility had a full infirmary, which Mr. Ashlock would need during his recovery from surgery. At that point, Dr. Myers' care of Mr. Ashlock ceased. Mr. Ashlock was scheduled to have surgery the following month. However, at his appointment on July 28, 2010, he again discussed the risks, benefits, and alternatives of the procedure with the doctor, and he elected not to undergo the procedure. He returned to the clinic a year later, on May 11, 2011, but the doctor did not recommend surgery at that time.

Mr. Ashlock initiated this action shortly after that appointment by filing his complaint against Dr. Myers and other prison officials, alleging that they were deliberately indifferent to his

3

serious medical needs. The Court screened his complaint as required, and granted Mr. Ashlock leave "to proceed against Dr. Gerald Myers in his individual capacity for monetary and punitive damages for denying him medical treatment for his facial injuries between May 17, 2010, and July 28, 2010." [DE 4]. The Court dismissed any other claims and the additional defendants. Mr. Ashlock subsequently retained counsel, and when his counsel moved to withdraw, the Court recruited counsel to represent him. Discovery has now closed, and Dr. Myers has filed a motion for summary judgment on the merits of Mr. Ashlock's claim, arguing that no reasonable jury could find that he was deliberately indifferent to Mr. Ashlock's medical needs..

## II. STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Kerri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006); *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its

pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Nonetheless, this "does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, the court still must make the finding that "given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

### III. DISCUSSION

Mr. Ashlock asserts in this action that Dr. Myers violated the Eight Amendment's prohibition against cruel and unusual punishment through his deliberate indifference to Mr. Ashlock's serious medical needs. To survive summary judgment on this claim, there must be evidence from which a reasonable juror could conclude that Dr. Myers "knew about but consciously disregarded a serious medical condition." *Fitzgerald v. Greer*, 324 F. App'x 510, 514 (7th Cir. 2009). "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Deliberate indifference is a high standard. Even medical malpractice and incompetence do not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Moreover, a "disagreement with medical professionals [does not] state a cognizable Eighth Amendment Claim under the deliberate

5

indifference standard of *Estelle v. Gamble* [429 U.S. 97 (1976)]." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Here, even viewing the facts in the light most favorable to Mr. Ashlock, no reasonable juror could conclude that Dr. Myers was deliberately indifferent to Mr. Ashlock's medical needs. Dr. Myers first learned of Mr. Ashlock's injuries on May 17, 2010, the day after they occurred. Because Mr. Ashlock's injuries were not life-threatening and he had already received appropriate care from the nursing staff, Dr. Myers did not send Mr. Ashlock to the emergency room. However, he prescribed pain medication, ordered a full liquid diet through May 30, 2010, and ordered x-rays of Mr. Ashlock's jaw, nasal bones, and eye sockets. Dr. Myers then reviewed the x-rays after they were taken the next day, on May 18, 2010. That evening, Dr. Myers completed a form requesting an outside consultation for Mr. Ashlock with an oculoplastic surgeon, marking the request as "Urgent." Over the next several weeks, Dr. Myers took a number of other actions in response to Mr. Ashlock's complaints of pain, including changing his pain medication and prescribing additional pain medications on several occasions. He also ordered a CT scan of Mr. Ashlock's face, anticipating that the oculoplastics specialists would need its results. Following Mr. Ashlock's appointment with the specialist on June 16, 2010, Mr. Ashlock was scheduled to undergo surgery on July 28, 2010. However, he was first transferred to another correctional facility on June 25, 2010, at which time he ceased to be under Dr. Myers' care.

Far from illustrating deliberate indifference, these facts indicate that Dr. Myers was quite attentive to Mr. Ashlock's medical needs. He requested a consultation with a specialist as soon as the need for such an appointment became apparent, and he prescribed a number of different medications and treatments for Mr. Ashlock's pain in the meantime. Mr. Ashlock's main complaint is that it took too long for him to see a specialist, but there is no evidence suggesting

that Dr. Myers was at fault for any delay. On the same day he reviewed the x-rays showing that Mr. Ashlock had injuries that could require surgery, Dr. Myers completed a request for a consultation with a specialist. The clinic scheduled Mr. Ashlock's appointment several weeks out, but Dr. Myers had no control over the clinic's scheduling, and there is no indication in the record that there were any alternatives or any other steps Dr. Myers could have taken to expedite Mr. Ashlock's treatment. Accordingly, a reasonable juror could not even find from these facts that Dr. Myers' care of Mr. Ashlock was lacking in any respect, much less that Dr. Myers was indifferent to Mr. Ashlock's medical needs. Therefore, summary judgment on this claim is warranted.

## IV.  CONCLUSION

Dr. Myers' motion for summary judgment [DE 65] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Dr. Myers.

SO ORDERED.

ENTERED:  March 30, 2015

          /s/ JON E. DEGUILIO
Judge
United States District Court